# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES NEGRETE, et al., | Case No. CV 16-0631 FMO (AJWx) |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** |
| CONAGRA FOODS, INC., et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. 259, "Motion"), and the oral argument presented at the hearing on December 16, 2020, the court concludes as follows.

## BACKGROUND

Defendants Conagra Brands, Inc., f/k/a ConAgra Foods, Inc. ("Conagra"), TreeHouse Private Brands, Inc., f/k/a Ralcorp Holdings, Inc., and ConAgra Foods Packaged Foods LLC (collectively, "defendants") are food processing companies that have facilities in California. (See Dkt. 173, Court's Order of March 29, 2019, at 1). In their operative Consolidated Third Amended Class Action Complaint (Dkt. 113, "TAC"), Moises Negrete ("Negrete"), Valentin Villar ("Villar"), Steven Anderson ("Anderson"), Felicia Avila ("Avila"), Ruben Maldonado ("Maldonado"), Felix Villela ("Villela"), Frank Perez ("Perez"), Jordyn Njoroge ("Njoroge"), Anita Del Rosario Patriz ("Patriz"), Abraham Ibarra ("Ibarra"), Arturo Verduzco ("Verduzco"), Victor Cruse ("Cruse"), and

Justin Soto ("Soto") (collectively, "plaintiffs") assert claims for: (1) failure to provide meal periods in violation of California Labor Code ("Labor Code") §§ 226.7 & 512 and California Industrial Welfare Commission Wage Order ("Wage Order") Nos. 1-2001 and 8-2001; (2) failure to provide rest breaks in violation of Labor Code § 226.7 and Wage Order Nos. 1-2001 and 8-2001; (3) failure to pay the minimum wage in violation of Labor Code §§ 1194 & 1197 and Wage Order Nos. 1-2001 and 8-2001; (4) failure to pay overtime wages in violation of Labor Code §§ 510 & 1194 and Wage Order Nos. 1-2001 and 8-2001; (5) failure to pay wages to discharged and quitting employees in violation of Labor Code §§ 201, 202 & 203; (6) failure to furnish accurate wage statements in violation of Labor Code §§ 226 & 1174 and Wage Order Nos. 1-2001 and 8-2001; (7) failure to maintain required records in violation of Labor Code § 226 and Wage Order Nos. 1-2001 and 8-2001; (8) failure to indemnify employees for necessary expenditures in violation of Labor Code § 2802 and Wage Order Nos. 1-2001 and 8-2001; (9) failure to pay reporting time pay in violation of Wage Order No. 8-2001; (10) unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (11) civil penalties pursuant to the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, et seq.; (12) conversion; and (13) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. (See Dkt. 113, TAC at ¶¶ 31-134). Plaintiffs assert these claims on behalf of themselves and "similarly situated classes of individuals . . . employed by defendants as non-exempt employees at Conagra locations in the State of California at any time from October 20, 2011 through the date this action settles or proceeds to final judgment[.]" (Id. at ¶ 18) (formatting omitted). Plaintiffs, who worked at seven of defendants' food processing facilities, located in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia, (see id. at ¶¶ 5-17), allege that defendants failed to give them legally sufficient meal and rest breaks, and did not pay them the wages they were due. (See Dkt. 173, Court's Order of March 29, 2019, at 2).

On March 29, 2019, the court granted in part plaintiffs' motion for class certification, and certified the following classes at defendants' respective facilities:

1. Azusa facility: "All non-exempt individuals whose work at the Azusa facility, from October 23, 2012, to January 31, 2016, required them to don and doff safety

equipment before starting and after finishing a shift, and/or all such individuals who worked at least one shift greater than 3.5 hours."[1]

2. Colton facility: "All non-exempt individuals who worked at least one shift greater than 3.5 hours at the Colton facility, from October 20, 2011, to June 13, 2014."

3. Fresno facility: "All non-exempt individuals whose work at the Fresno facility, from October 20, 2011, to May 19, 2017, required them to don and doff safety equipment before starting and after finishing a shift, all such individuals who worked at least one shift greater than 3.5 hours, and/or all such individuals who were subject to defendants' rounding practices."

4. Helm facility: "All non-exempt individuals whose work at the Helm facility, from October 20, 2011, to September 2, 2016, required them to don and doff safety equipment before starting and after finishing a shift, all such individuals who worked at least one shift greater than 3.5 hours, all such individuals who were subjected to defendants' rounding practices, and/or all such individuals who were subjected to defendants' automatic deduction practices."

5. Lodi facility: "All non-exempt individuals whose work at the Lodi facility, from October 20, 2011, to January 31, 2016, required them to don and doff safety equipment before starting and after finishing a shift, and/or all such individuals who worked at least one shift greater than 3.5 hours."

6. Oakdale facility: "All non-exempt individuals whose work at the Oakdale facility, from October 20, 2011, to the filing date of this Order, required them to don and doff safety equipment before starting and after finishing a shift, all such individuals who worked at least one shift greater than 3.5 hours, all such individuals who were subjected to defendants' rounding practices, and/or all such individuals who were subjected to defendants' automatic deduction practices."

---

[1] The court expected that both the rest and meal break classes would be encompassed by certifying a class for employees who worked more than 3.5 hours in at least one shift. (See Dkt. 173, Court's Order of March 29, 2019, at 27 n. 8).

|   |   |   |
|---|---|---|
| | 7. | Visalia facility: "All non-exempt individuals whose work at the Visalia facility, from October 20, 2011, to [January 31, 2016], required them to don and doff safety equipment before starting and after finishing a shift, and/or all such individuals who worked at least one shift greater than 3.5 hours." |
| | 8. | With respect to plaintiffs' derivative claims at all facilities: "All non-exempt individuals who worked for defendants, from October 20, 2011, to the filing date of this Order, at defendants' facilities in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia, California, who quit or were discharged, received itemized wage statements, and/or were subject to unfair business practices prohibited under California law, with one subclass for each facility." |

(Dkt. 173, Court's Order of March 29, 2019, at 27-28); (Dkt. 177, Court's Order of May 9, 2019).

After engaging in "extensive fact and expert discovery and arms'-length, non-collusive bargaining between counsel, including three mediations[,]" (Dkt. 259, Motion 5); (see id. at 7-9), the parties reached a settlement in June 2020. (Id. at 8); (Dkt. 259-1, Declaration of Launa Adolph in Support of Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement ("Adolph Decl.") at ¶¶ 37-40). The parties have defined the settlement class as:

> [A]ll non-exempt employees, including regular, seasonal, contracted, and temporary employees (including any employee directly employed by a Third-Party Staffing Company), who worked at facilities owned and operated by any Defendant in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia, California at any time during the Class Periods, except those employees who previously opted out.

(Dkt. 259-2, Amended Stipulation of Class Action Settlement ("Settlement Agreement") at ¶ 8). The "Class Periods" range from: (a) October 23, 2012, to March 17, 2017, for the Azusa facility; (b) October 20, 2011, to June 13, 2014, for the Colton facility; (c) October 20, 2011, to May 19, 2017, for the Fresno facility; (d) October 20, 2011, to September 2, 2016, for the Helm facility; (e) October 20, 2011, to April 17, 2020, for the Lodi facility; (f) October 20, 2011, to January 15, 2021, for the Oakdale facility; and (g) October 20, 2011, to February 28, 2019, for the Visalia facility. (Id.

at ¶ 10). "Third-Party Staffing Company" is defined as "any company that is not owned or controlled by any Defendant . . . and whose employees worked at facilities owned and operated by any Defendant in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia . . . at any time during the Class Periods." (Id. at ¶ 47).

Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $18 million dollars, (Dkt. 259-2, Settlement Agreement at ¶¶ 27, 77(a)), which will be used to pay the class, PAGA, and the FLSA collective action claims, the class representatives' service payments, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency (the "LWDA"), and attorney's fees and costs. (See id. at ¶¶ 27-28). Subject to court approval, the settlement provides for up to $6 million dollars (33 1/3% of the gross settlement amount) in attorney's fees, (id. at ¶ 77(c)); costs not to exceed $700,000.00, (id.); incentive payments of up to $120,000.00,[2] (id. at ¶ 77(b)); and a $270,000.00 payment to the LWDA. (Id. at ¶77(e)). Also, the proposed settlement administrator, Simpluris, Inc. ("Simpluris"), shall be paid up to $75,000.00 from the gross settlement amount. (Id. at ¶¶ 46, 77(f)). The resulting net settlement amount will be used to pay class and collective-action members.[3] All settlement class members will automatically be paid a pro rata amount without the need to submit

---

[2] The $120,000 would be allocated as follows: $5,000 each for Verduzco and Villar, and $10,000 each for the remaining class representative-plaintiffs. (Dkt. 259-2, Settlement Agreement at ¶ 77(b)). Cruse, who participated in this action for several years and had his deposition taken, passed away during this litigation, and his service award will go to his heirs. (Dkt. 259, Motion at 21 n. 10); see, e.g., Hose v. Washington Inventory Service, Inc., 2020 WL 3606404, *5 & *11 (S.D. Cal. 2020) (awarding service payment to estate of deceased class representative).

[3] The net settlement amount will be divided among class members on a pro rata basis based on the number of weeks each class member worked during the relevant class period. (See Dkt. 259, Motion at 10); (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)). All aggrieved employees will also receive a pro rata share of the PAGA fund based on their compensable workweeks during the PAGA periods. (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)(3)). Finally, class members who return the FLSA Opt-In Form will receive a pro rata share of the $100,000 FLSA Fund. (See id. at ¶¶ 77(a)(i)(4) & (d)).

a claim form,[4] and those who sign and return a FLSA Opt-In Form will receive an additional payment from the amount allocated to the FLSA claim. (Id. at ¶¶ 77(a), (d)-(e)).

In their Motion, plaintiffs seek an order: (1) preliminarily approving the proposed settlement; (2) certifying the proposed settlement class and FLSA settlement class; (3) appointing plaintiffs as class representatives; (4) appointing Matthew H. Matern, Launa Adolph, and Deanna S. Leifer of Matern Law Group, PC and Faraz Rastegar and Douglas W. Perlman of Rastegar Law Group, APC as class counsel; (5) appointing Simpluris as settlement administrator; (6) approving and ordering dissemination of the proposed class notice and forms; and (7) scheduling a final approval hearing. (See Dkt. 259, Motion at 3).

## LEGAL STANDARD

I.  CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[5] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]"). In the settlement context, a court must pay "undiluted, even heightened, attention" to class certification requirements. See Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

---

[4] The class includes approximately 369 class members who were placed to work at the Oakdale facility by Third-Party Staffing Agencies for whom neither defendants nor the Third-Party Staffing Agencies have identifying information. (See Dkt. 259, Motion at 23).

[5] All "Rule" references are to the Federal Rules of Civil Procedure.

6

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes"). Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

     (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

     (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

  The party seeking class certification bears the burden of demonstrating that the proposed class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial. See In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

II.  FAIRNESS OF CLASS ACTION SETTLEMENT.

  Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

  "If the [settlement] proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. Spann v. J.C. Penney

Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions, § 13:10 (5th ed.) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."); see, e.g., Fed. R. Civ. P. 23(e)(1)(A) ("The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."). In determining whether a settlement is fair, reasonable, and adequate, the newly revised Rule 23(e)(2) standard requires the court to evaluate whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."[6] Fed. R. Civ. P. 23(e)(2).

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment

---

[6] Settlement approval requires the court to scrutinize all settlements, whether negotiated prior to or after class certification, for conflicts of interest or signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks omitted); see Fed. R. Civ. P. 23(e)(2). The court assesses these factors in connection with final approval.

to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.3d at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); see also 2018 Adv. Comm. Notes to Amendments to Rule 23 (stating that "[t]he goal of t[he Rule 23(e)] amendment [wa]s not to displace any factor" that courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"); 4 Newberg on Class Actions, § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23.").

## DISCUSSION

I. MODIFICATION OF THE CLASSES.

On March 29, 2019, the court certified subclasses with respect to each facility. (See Dkt. 173, Court's Order of March 29, 2019, at 27-28); (Dkt. 177, Court's Order of May 9, 2019). The Settlement Agreement includes a single class definition that extends the class period for each facility through the last date that any defendant owned or operated any of the seven facilities, and includes claims for failure to indemnify business expenses, failure to pay reporting time pay, and conversion. (See Dkt. 259-2, Settlement Agreement at ¶¶ 8, 10); (Dkt. 259, Motion at 25).

Here, given the court's prior determination in connection with plaintiffs' motion for class certification, (see Dkt. 173, Court's Order of March 29, 2019), and given that the individual and class claims arise from common, uniform policies, which plaintiffs contend applied to all class members during the Class Periods, (see Dkt. 259, Motion at 27), the court finds that the modified class can be certified for settlement purposes.[7] See In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d at 558 ("[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is

---

[7] The court finds that the FLSA collective action should be preliminarily certified. See, e.g., Campbell v. City of Los Angeles, 903 F.3d 1090, 1112-13 (9th Cir. 2018) (noting that the FLSA "imposes a lower bar than Rule 23").

informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable.").

II. FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A. The Settlement Is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length. However, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation marks omitted).

Here, plaintiffs' counsel "conducted an extensive investigation" and the parties engaged in "significant fact and expert discovery[,]" which included the production of tens of thousands of pages of documents, and the depositions of all 13 class representatives, defendants' 30(b)(6) witnesses, and four expert witnesses, three of which were retained by plaintiffs. (See Dkt. 259-1, Adolph Decl. at ¶¶ 32-34). The parties also engaged in significant motion and appellate practice, including motions for class certification and summary judgment. (Id. at ¶¶ 29-31). The parties participated in a meditation in 2017, which was unsuccessful, but reached a settlement three years later in June 2020, after engaging in further settlement discussions before another mediator. (See id. at ¶¶ 37-39). Finally, plaintiffs' counsel has concluded that the settlement is "fair, adequate, and reasonable[.]" (Id. at ¶ 49).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions. The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement was "the product of fraud or overreaching

by, or collusion between, the negotiating parties[.]" Rodriguez, 563 F.3d at 965 (internal quotation marks omitted).

### B. The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and Is a Fair and Reasonable Outcome for Class Members.

#### 1. Recovery for Class Members.

As described above, class members will share in a non-reversionary gross settlement amount of $18 million dollars.[8] (Dkt. 259-2, Settlement Agreement at ¶ 27). According to plaintiffs, the settlement amount represents "approximately 37.98% of the maximum potential damages, exclusive of penalties and interest, allegedly owed to Class Members." (Dkt. 259, Motion at 17) (emphasis omitted); (Dkt. 259-1, Adolph Decl. at ¶ 45) (setting forth plaintiffs' valuation of claims). If the requested attorney's fees and costs, the LWDA payment, settlement administration costs, and the service awards are approved, the net settlement amount is estimated to be at least $10,755,000.00, which would result in an average recovery per class member of $1,169.66. (Dkt. 259, Motion at 17); (Dkt. 259-1, Adolph Decl. at ¶ 48).

Under the circumstances, the court is persuaded that the settlement relief is fair, reasonable, and adequate, particularly when taking into account the costs, risks, and delay of trial and appeal. See Fed. R. Civ. P. 23(e)(2)(C)(i). The costs and risks of continued litigation are significant in this case. Weighed against those costs and risks, and coupled with the delays associated with continued litigation, the court is persuaded that the relief provided to the class is adequate and falls within the range of reasonableness. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed

---

[8] The $18,000,000 settlement fund includes $100,000, which will be allocated to class members that submit a FLSA Opt-In Form. (See Dkt. 259-2, Settlement Agreement at ¶¶ 21, 77(d)).

settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Finally, the settlement promotes enforcement of wage and hour laws in that it provides relief for plaintiffs' PAGA claim.[9] (See 259-2, Settlement Agreement at ¶¶ 32, 77(e)).

          2.    **Release of Claims**.

The court must also consider whether a class action settlement contains an overly broad release of liability. See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class). Here, class members who do not exclude themselves from the settlement will release "any and all claims . . . that were pleaded or could have been pleaded based upon the factual allegations set forth in the operative complaint and arising at any time during the respective Class Period[.]"[10] (Dkt. 259-2, Settlement Agreement at ¶ 74(a)).

---

[9] Although the LWDA received notice of the settlement, (see Dkt. 259-1, Adolph Decl. at ¶ 43), it did not object or respond, (id.), which the court construes as consent to the proposed settlement. See Echavez v. Abercrombie & Fitch Co., Inc., 2017 WL 3669607, *3 (C.D. Cal. 2017) ("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto. The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

[10] The inclusion of the Third-Party Staffing Companies in the definition of Released Parties, (see Dkt. 259-2, Settlement Agreement at ¶¶ 41 & 47), does not undermine the fairness of the settlement. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006) ("A class settlement may . . . release factually related claims against parties not named as defendants[.]"); 6 Newberg on Class Actions § 18:20 (5th ed.) ("[C]ourts approve the release of non-parties, even those beyond their jurisdiction, so long as there exists some factual relationship between the release and the class's claims.").

Under the circumstances, the court finds that the release adequately balances fairness to plaintiffs and the absent class members with defendants' business interest in ending this litigation. See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

### C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other." One of the areas the court must scrutinize carefully is "[i]ncentive awards [which] are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the Settlement provides that the class representatives may apply to the court for incentive awards, allocated as follows: $5,000 each for Verduzco and Villar, and $10,000 each for Negrete, Anderson, Avila, Maldonado, Villela, Perez, Njoroge, Patriz, Ibarra, Cruse, and Soto. (See Dkt. 259-2, Settlement Agreement at ¶ 77(b)). Plaintiffs appear to have been diligent in litigating this case, (see Dkt. 247-5, Declaration of Moises Negrete [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-6, Declaration of Steven Anderson [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-7, Declaration of Felicia Avila [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-8, Declaration of Ruben Maldonado [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-9, Declaration of Frank Perez [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-10, Declaration of Felix Villela [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-11, Declaration of Justin Soto [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-12, Declaration of Anita

Del Rosario Patriz [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-13, Declaration of Abraham Ibarra [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-14, Declaration of Arturo Verduzco [ ] at ¶¶ 3-4, 6-7); (Dkt. 247-15, Declaration of Valentin Villar [ ] at ¶¶ 3-4, 6-7); (Dkt. 251, Declaration of Jordyn Njoroge [ ] at ¶ 7), and each had his or her deposition taken by defendants. (See Dkt. 259, Motion at 16). Under the circumstances, the court tentatively finds that the requested service payments are reasonable.

### D. Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]" Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see, e.g., Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001), disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269 (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they

should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the settlement but remain in the class. See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, the parties request that Simpluris be appointed as settlement administrator. (See Dkt. 259-2, Settlement Agreement at ¶ 46). Class members will receive notice by first class mail,[11] (see id. at ¶¶ 9, 30, 75(a)(i)), which will consist of the Notice of Class Action Settlement, (see id., Exh. 1, "Notice"), an Information Sheet, (id., Exh. 2), a Request for Exclusion Form, (id., Exh. 3), and a FLSA Opt-In Form. (Id., Exh. 4). The Notice describes the nature of the action and the claims alleged. (See id., Exh. 1, Notice at 1-2); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). It provides the definition of the class, (see Dkt. 259-2, Settlement Agreement, Exh. 1, Notice at 2); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release. (See Dkt. 259-2, Settlement Agreement, Exh. 1, Notice at 3-5). The Notice includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendants. (See id. at 1, 5-6); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi). Finally, the Notice explains the procedures for objecting to the settlement, (see Dkt. 259-2, Settlement Agreement, Exh. 1, Notice at 5), and provides information about the Final Fairness Hearing. (See id. at 6).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely manner to notify the class

---

[11] The Notice will also be published in English and Spanish-language newspapers of general circulation in San Joaquin and Stanislaus Counties. (See Dkt. 259-2, Settlement Agreement at ¶ 39 & Exh. 5). Publication of the Notice is intended to provide notice to class members who worked at the Oakdale facility and who are not included in the Class Information. (Id. at ¶ 39). Additionally, notice will be provided via advertisements on Google and Facebook. (Id. at ¶¶ 45, 75(a)(ii)).

members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

E.  Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement **(Document No. 259)** is **granted** as set forth in this Order.

2.  The court preliminarily certifies the class, as defined in ¶ 8 of the Amended Stipulation of Class Action Settlement ("Settlement Agreement") (Dkt. 259-2), for the purposes of settlement.

3.  The court re-appoints Moises Negrete, Steven Anderson, Felicia Avila, Abraham Ibarra, Ruben Maldonado, Jordyn Njoroge, Anita del Rosario Patriz, Frank Perez, Justin Soto, Arturo Verduzco, Valentin Villar, and Felix Villela as class representatives.

4.  The court re-appoints Matthew J. Matern, Launa Adolph and Deanna S. Leifer of Matern Law Group, PC, and Farzad Rastegar and Douglas Perlman of Rastegar Law Group APC to serve as class counsel.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the class Notice, (Dkt. 259-2, Settlement Agreement, Exh. 1 (Notice); id., Exh. 2 (Information Sheet); id., Exh. 3 (Request for Exclusion Form); & id., Exh. 4 (FLSA Opt-In Form)).  The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7. Simpluris shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **July 29, 2021**.

8. Plaintiffs shall file a motion for an award of class representative incentive payments and attorney's fees and costs no later than **August 30, 2021,** and notice it for hearing for the date of the final approval hearing set forth below.[12]

9. Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; (b) exclude him or herself from the settlement; and/or (c) opt in to the FLSA collective action must file his or her objection to the settlement, request for exclusion, or FLSA Opt-In Form no later than **September 30, 2021**, in accordance with the Notice and this Order.

10. Plaintiffs shall, no later than **November 4, 2021,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement. The motion shall be noticed for hearing for the date of the final approval hearing set forth below.[13]

11. Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **November 11, 2021**.

12. Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **November 18, 2021**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13. A final approval (fairness) hearing is hereby set for **December 2, 2021,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

---

[12] If the request for attorney's fees is made under the percentage-of-the-fund method, counsel shall also make a showing under the lodestar method.

[13] The motion shall address each Rule 23(e) requirement as well as the Bluetooth factors.

14. All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 21st day of June, 2021.

                                                  /s/
                              Fernando M. Olguin
                            United States District Judge