UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MOISES NEGRETE, et al., | ) | Case No. CV 16-0631 FMO (AJWx) |
| Plaintiffs, | ) | |
| v. | ) | **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| CONAGRA FOODS, INC., et al., | ) | |
| Defendants. | ) | |

Having reviewed and considered plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 271, "Motion") and Motion for Attorneys' Fees and Costs and Class Representative Service Awards (Dkt. 266, "Fees Motion"), and the oral argument presented during the final fairness hearing held on January 13, 2022, the court concludes as follows.

## BACKGROUND

Defendants Conagra Brands, Inc., f/k/a ConAgra Foods, Inc. ("Conagra"), TreeHouse Private Brands, Inc., f/k/a Ralcorp Holdings, Inc., and ConAgra Foods Packaged Foods LLC (collectively, "defendants") are food processing companies that have facilities in California. (See Dkt. 263, Court's Order of June 21, 2021 ("Preliminary Approval Order" or "PAO") at 1). In their operative Consolidated Third Amended Class Action Complaint ("TAC") (Dkt. 113), Moises Negrete ("Negrete"), Valentin Villar ("Villar"), Steven Anderson ("Anderson"), Felicia Avila ("Avila"), Ruben Maldonado ("Maldonado"), Felix Villela ("Villela"), Frank Perez ("Perez"), Jordyn Njoroge

("Njoroge"), Anita Del Rosario Patriz ("Patriz"), Abraham Ibarra ("Ibarra"), Arturo Verduzco ("Verduzco"), Victor Cruse ("Cruse"), and Justin Soto ("Soto") (collectively, "plaintiffs") assert claims for: (1) failure to provide meal periods in violation of California Labor Code ("Labor Code") §§ 226.7 & 512 and California Industrial Welfare Commission Wage Order ("Wage Order") Nos. 1-2001 and 8-2001; (2) failure to provide rest breaks in violation of Labor Code § 226.7 and Wage Order Nos. 1-2001 and 8-2001; (3) failure to pay the minimum wage in violation of Labor Code §§ 1194 & 1197 and Wage Order Nos. 1-2001 and 8-2001; (4) failure to pay overtime wages in violation of Labor Code §§ 510 & 1194 and Wage Order Nos. 1-2001 and 8-2001; (5) failure to pay wages to discharged and quitting employees in violation of Labor Code §§ 201, 202 & 203; (6) failure to furnish accurate wage statements in violation of Labor Code §§ 226 & 1174 and Wage Order Nos. 1-2001 and 8-2001; (7) failure to maintain required records in violation of Labor Code § 226 and Wage Order Nos. 1-2001 and 8-2001; (8) failure to indemnify employees for necessary expenditures in violation of Labor Code § 2802 and Wage Order Nos. 1-2001 and 8-2001; (9) failure to pay reporting time pay in violation of Wage Order No. 8-2001; (10) unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (11) civil penalties pursuant to the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, et seq.; (12) conversion; and (13) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. (See Dkt. 113, TAC at ¶¶ 31-134); (Dkt. 263, PAO at 1-2). Plaintiffs assert these claims on behalf of themselves and "similarly situated classes of individuals . . . employed by defendants as non-exempt employees at Conagra locations in the State of California[.]" (Dkt. 113, TAC at ¶ 18); (Dkt. 263, PAO at 2). Plaintiffs, who worked at seven of defendants' food processing facilities, located in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia, (see Dkt. 263, PAO at 2), allege that defendants failed to give them legally sufficient meal and rest breaks, and did not pay them the wages they were due. (Id.).

On March 29, 2019, the court granted in part plaintiffs' motion for class certification. (Dkt. 263, PAO at 2-4). After engaging in "extensive fact and expert discovery and arms'-length, non-collusive bargaining between counsel, including three mediations[,]" the parties reached a settlement in June 2020. (Id. at 4) (internal quotation marks omitted). The parties have defined

the settlement class as

> all non-exempt employees, including regular, seasonal, contracted, and temporary employees (including any employee directly employed by a Third-Party Staffing Company), who worked at facilities owned and operated by any Defendant in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia, California at any time during the Class Periods, except those employees who previously opted out.

(Dkt. 259-2, Amended Stipulation of Class Action Settlement ("Settlement Agreement") at ¶ 8). The "Class Periods" range from: (a) October 23, 2012, to March 17, 2017, for the Azusa facility; (b) October 20, 2011, to June 13, 2014, for the Colton facility; (c) October 20, 2011, to May 19, 2017, for the Fresno facility; (d) October 20, 2011, to September 2, 2016, for the Helm facility; (e) October 20, 2011, to April 17, 2020, for the Lodi facility; (f) October 20, 2011, to January 15, 2021, for the Oakdale facility; and (g) October 20, 2011, to February 28, 2019, for the Visalia facility. (Id. at ¶ 10). "Third-Party Staffing Company" is defined as "any company that is not owned or controlled by any Defendant . . . and whose employees worked at facilities owned and operated by any Defendant in Azusa, Colton, Fresno, Helm, Lodi, Oakdale, and Visalia . . . at any time during the Class Periods." (Id. at ¶ 47).

Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $18 million, (Dkt. 259-2, Settlement Agreement at ¶¶ 27, 77(a)), which will be used to pay the class, PAGA, and the FLSA collective action claims, the class representatives' service awards, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency (the "LWDA"), and attorney's fees and costs. (See id. at ¶¶ 27-28). Subject to court approval, the settlement provides for up to $6 million (33 1/3% of the gross settlement amount) in attorney's fees, (id. at ¶ 77(c)); costs not to exceed $700,000, (id.); incentive payments of up to $120,000,[1] (id. at ¶ 77(b)); and a $270,000 payment to the LWDA. (Id. at ¶77(e)). The

---

[1] The $120,000 would be allocated as follows: $5,000 each for Verduzco and Villar, and $10,000 each for the remaining class representatives. (Dkt. 259-2, Settlement Agreement at ¶ 77(b)). Cruse, who participated in this action for several years and had his deposition taken,

proposed settlement administrator, Simpluris, Inc. ("Simpluris"), will also be paid up to $75,000 from the gross settlement amount. (Id. at ¶¶ 46, 77(f)). The resulting net settlement amount will be used to pay class and collective-action members.[2] All settlement class members will automatically be paid without the need to submit a claim form, and those who signed and returned a FLSA Opt-In Form will receive an additional payment from the amount allocated to the FLSA claim. (Id. at ¶¶ 77(a), (d)-(e)); (Dkt. 263, PAO at 5-6).

On June 21, 2021, the court granted preliminary approval of the settlement, appointed Simpluris as the settlement administrator, and directed Simpluris to provide notice to class members. (See Dkt. 263, PAO at 17-18). Thereafter, Simpluris implemented the notice program approved by the court. (See Dkt. 271-3, Declaration of Christina Fowler Regarding Notice and Settlement Administration ("Fowler Decl.") at ¶¶ 4-15); (id., Exh. A (Class Notice)); (id., Exh. B (Publication Notice)); (id., Exh. C (Claim Form)); (Dkt. 263, PAO at 15-17) (approving notice program); (Dkt. 265, Court's Order of September 3, 2021) (extending notice deadlines). The Class Notice was sent to 8,201 class members.[3] (See Dkt. 271-3, Fowler Decl. at ¶¶ 10, 15). As of January 14, 2022, Simpluris had received 16 requests for exclusion and no objections to the settlement. (See Dkt. 277, Supp. Fowler Decl. at ¶¶ 5-6).

---

passed away during this litigation, and his service award will go to his heirs. (Dkt. 263, PAO at 5 n. 2); see, e.g., Hose v. Washington Inventory Service, Inc., 2020 WL 3606404, *5 & *11 (S.D. Cal. 2020) (awarding service payment to estate of deceased class representative).

[2] The net settlement amount will be divided among class members on a pro rata basis based on the number of weeks each class member worked during the relevant class period. (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)); (see Dkt. 263, PAO at 5 n. 3). All aggrieved employees will also receive a pro rata share of the PAGA fund based on their compensable workweeks during the PAGA periods. (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)(3)); (Dkt. 263, PAO at 5. n. 3). Finally, class members who return the FLSA Opt-In Form will receive a pro rata share of the $100,000 FLSA Fund. (See Dkt. 259-2, Settlement Agreement at ¶¶ 77(a)(i)(4) & (d)); (Dkt. 263, PAO at 5 n. 3).

[3] After receiving claim forms from individuals who self-identified as class members, removing individuals who were not class members or worked zero weeks during the class period, and those who opted out, there are 8,228 participating class members. (See Dkt. 277, Second Supplemental Declaration of Christina Fowler Regarding Notice and Settlement Administration ("Supp. Fowler Decl.") at ¶ 8). As of December 16, 2021, 267 class notices remained undeliverable. (See Dkt. 271-3, Fowler Decl. at ¶ 16).

Plaintiffs now seek: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for plaintiffs. (See Dkt. 271, Motion); (Dkt. 266, Fees Motion).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[4] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[5] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

---

[4] All further "Rule" references are to the Federal Rules of Civil Procedure.

[5] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided to all 50 state attorneys general and the United States Attorney General on February 18, 2021. (See Dkt. 271-3, Fowler Decl. at ¶ 5).

provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseno v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate.'") (citing Fed. R. Civ. P. 23(e)(2)(C)).  Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[6] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947

---

[6] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel").

6

(internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125.

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. Class Certification.

In its order granting preliminary approval, the court certified the modified class pursuant to Rule 23(b)(3). (See Dkt. 263, PAO at 10-11, 17). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).[7] See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the class notice and notification procedures. (See Dkt. 263, PAO at 15-18). As noted above, the notice program was implemented by Simpluris. (See Dkt. 271-3, Fowler Decl. at ¶¶ 4-15); (id., Exh. A (Class Notice)); (id., Exh. B (Publication Notice)). Based on the record and its prior findings, the court finds that the Class Notice, (see id. at Exh. A), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

---

[7] The court also certified the FLSA collective, (see Dkt. 263, PAO at 10 n. 7), and sees no need to disturb that determination.

C. <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.[8]

   1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see <u>McKinney-Drobnis</u>, 16 F.4th at 607. Here, the court addressed the adequacy of counsel factor in connection with plaintiffs' motion for class certification, (see Dkt. 173, Court's Order of March 29, 2019, at 24-25), and the arm's-length negotiations factor in connection with preliminary approval. (See Dkt. 263, PAO at 11-12). The court noted that plaintiffs' counsel "conducted an extensive investigation" and the parties engaged in "significant fact and expert discovery[,]" which included the production of tens of thousands of pages of documents, and the depositions of all 13 class representatives, defendants' 30(b)(6) witnesses, and four expert witnesses, three of which were retained by plaintiffs. (<u>Id.</u> at 11). In addition, the parties "engaged in significant motion and appellate practice, including motions for class certification and summary judgment." (<u>Id.</u>). The court concluded, based on the record in this case, that the "parties thoroughly investigated and considered their own and the opposing parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (<u>Id.</u> at 11-12). The court finds these factors weigh in favor of granting final approval.

---

[8] Prior to the 2018 amendment to Rule 23(e), courts applied the following "<u>Churchill</u>" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004); see <u>McKinney-Drobnis</u>, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the <u>Churchill</u> factors). Because the Ninth Circuit has noted that "it is still appropriate for district courts to consider the[ <u>Churchill</u>] factors in their holistic assessment of settlement fairness[,]" <u>McKinney-Drobnis</u>, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in applying the Rule 23(e)(2) factors.

2. **Relief.**

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

The court previously found that the settlement amount was 38% of the maximum potential damages, exclusive of penalties and interest, and that it was "fair, reasonable, and adequate[.]" (Dkt. 263, PAO at 12); (see also Dkt. 271, Motion at 10-11); 4 Newberg on Class Actions, § 13:51 (5th ed.) ("The primary way a court determines whether the settlement's value is sufficient is by (1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome."). Nothing has changed since preliminary approval to undermine the court's previous findings.

        a. *Costs, Risks, and Delay*.

In granting preliminary approval of the settlement, the court found that the class recovery was adequate, "particularly when taking into account the costs, risks, and delay of trial and appeal." (Dkt. 263, PAO at 12). The court recognized that the "costs and risks of continued litigation [were] significant" and when "[w]eighed against those costs and risks" and the "delays associated with continued litigation," the "relief provided to the class [was] adequate[.]" (Id.); see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Here, the settlement provides class members immediate monetary benefits in the face of various defenses to plaintiffs' claims and substantial delay. (See Dkt. 271, Motion at 11). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,

221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

### b. *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.). Here, the settlement does not include a claims procedure. Instead, each class member that did not exclude him or herself will be entitled to a share of the net settlement amount without having to submit a claim form. (See Dkt. 259-2, Settlement Agreement at ¶¶ 77(a)).

### c. *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-a-vis the relief provided for the class[.]" Id. (internal quotation marks omitted).

The court must assess the proposed award of attorney's fees by considering the Bluetooth factors.[9] See McKinney-Drobnis, 16 F.4th at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e)

---

[9] As an initial matter, in granting preliminary approval, the court carefully scrutinized the settlement and determined that it was the product of arm's-length negotiations, (see Dkt. 263, PAO at 11-12), and that there was "no evidence that the settlement was 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id. at 11-12) (quoting Rodriguez v. W. Publ'g Corp, 563 F.3d 948, 965 (9th Cir. 2009)).

analysis.") (internal quotation marks omitted) (brackets in original). Here, consideration of the Bluetooth factors does not undermine the fairness of the settlement.

First, the Settlement Agreement provides that class counsel shall seek $6 million in attorney's fees from the gross settlement amount of $18 million. (Dkt. 259-2, Settlement Agreement at ¶¶ 27, 77(c)). Thus, counsel would not be receiving a disproportionate share of the settlement since class members will be receiving a considerable monetary payment. See Bluetooth, 654 F.3d at 947. Second, although the Settlement Agreement includes a clear sailing provision,[10] (see Dkt. 259-2, Settlement Agreement at ¶ 77(c)), any fees not awarded will not revert to defendants, but will instead be added to the net settlement fund, from which payments to class members will be made. (See id.). Thus, the fact that any fees not awarded will be added to the net settlement fund supports approval of the settlement. See, e.g., Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant); cf. McKinney-Drobnis, 16 F.4th at 610 ("When a clear-sailing provision is paired with a reverter, the terms together increase the risk that class counsel will unreasonably raise the amount of requested fees, and the class members will have less incentive to push back because the recovery of any unawarded fees will inure to the benefit of the defendants, not the class members.").

    d.  *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[11] Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreements are at issue in this case. (See Dkt. 271, Motion at 10 n. 6).

---

[10] As noted earlier, one type of "clear sailing" agreement is where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Bluetooth, 654 F.3d at 940 n. 6; see also Roes, 944 F.3d at 1049 (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel").

[11] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

       3.  **Equitable Treatment of Class Members**.[12]

  Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions, § 13:48 (5th ed.).

  Here, the settlement does not favor any particular group of class members. (See, generally, Dkt. 259-2, Settlement Agreement). The net settlement amount will be shared pro-rata among all class members who did not opt out.[13] (See Dkt. 271, Motion at 12). Specifically, each class member's share of the net settlement amount will be based on the number of weeks worked by the class member during the relevant class periods. (See id.); (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)). Accordingly, this factor also weighs in favor of final approval.

       4.  **The Reaction of Class Members to the Proposed Settlement**.

  The reaction of the class members to the proposed settlement has been very positive. There were no objections and only 16 requests for exclusion. (See Dkt. 277, Supp. Fowler Decl. at ¶¶ 5-6). The positive reaction of the class supports approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

  In short, the court finds that the settlement is fair, reasonable, and adequate, and not the

---

[12] The court will address plaintiffs' request for incentive payments below.

[13] Class members that submitted valid FLSA Opt-In Forms will also be entitled to a share of the FLSA fund. (Dkt. 259-2, Settlement Agreement at ¶ 77(a)(i)(4)).

product of collusion.

II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS.

    A. <u>Attorney's Fees</u>.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See <u>Mangold v. Cal. Public Util. Comm'n</u>, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); <u>Rodriguez v. Disner</u>, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."). However, courts "may still look to federal authority for guidance in awarding attorneys' fees."[14] <u>Black v. T-Mobile USA, Inc.</u>, 2019 WL 3323087, *5 (N.D. Cal. 2019) (citing <u>Apple Computer, Inc. v. Sup. Ct.</u>, 126 Cal.App.4th 1253, 1264 n. 4 (2005)).

The Ninth Circuit and the California Supreme Court have both held that trial courts have the discretion to choose among two different methods for calculating a reasonable attorney's fees award. See <u>Laffitte v. Robert Half Int'l Inc.</u>, 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); <u>Bluetooth</u>, 654 F.3d at 942 (noting that "courts have discretion to employ either the lodestar method or the percentage-of-recovery method"). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours

---

[14] Outside the context of coupon settlements, it does not appear that the Ninth Circuit has directly addressed whether federal or state law applies to attorney's fees in class actions based on CAFA diversity jurisdiction. However, in a recent case, the Ninth Circuit applied federal law where jurisdiction was based on CAFA. See, e.g., <u>Kim v. Allison</u>, 8 F.4th 1170, 1174, 1180 (9th Cir. 2021) (noting that plaintiff filed class action in federal court pursuant to CAFA for violations of California statutes and explaining that the Ninth "Circuit permits two methods of calculating attorneys' fee awards in class actions: (1) the 'lodestar' method and (2) the 'percentage-of-recovery method").

reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted); see also In re Hyundai, 926 F.3d at 570 ("The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. The district court may then adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]") (citations and internal quotation marks omitted). In the alternative, "[t]he percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." Laffitte, 1 Cal.5th at 489; see also In re Hyundai, 926 F.3d at 570 (same).

Here, class counsel seek attorney's fees pursuant to the percentage of the fund method, (see Dkt. 266, Fees Motion at 7-11), which the court in its discretion will utilize. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."); Laffitte, 1 Cal.5th at 504. Under the percentage of the fund method, California courts have "referred to a 25 percent benchmark, but they have often been willing to approve awards of up to 33 percent of the total fund." Pena v. Taylor Farms Pacific, Inc., 2021 WL 916257, *4 (E.D. Cal. 2021); see In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.") (internal quotation and alteration marks omitted); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award); In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); see, e.g., Black, 2019 WL 3323087, at *6 (utilizing federal 25% benchmark in diversity class action); Lloyd v. Navy Federal Credit Union, 2019 WL 2269958, *13 (S.D. Cal. 2019) (same). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." In re Hyundai, 926 F.3d at 570;

Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. 2016) (noting 25% benchmark "which the district court may adjust upward or downward to account for any unusual circumstances involved in the case") (internal quotation marks and alterations omitted); see also Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); Correa v. Zillow, Inc., 2021 WL 4925394, *5 (C.D. Cal. 2021) (similar); see also In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Under the circumstances of this case, the court finds that a departure from the 25% benchmark is warranted. First, the settlement amount, constituting 37.98% of the maximum potential damages, excluding penalties and interest, is significant and will result in an average payment of $1,332.49 to each class member. (Dkt. 277, Supp. Fowler Decl. at ¶ 8); (see also Dkt. 266, Fees Motion at 11); (Dkt. 271, Motion at 13). The settlement amount is on the higher end for wage and hour class action settlements over which this court has presided. Second, counsel has litigated this case since 2016, on a contingency basis.[15] (See Dkt. 266, Fees Motion at 11). In short, the court is persuaded that an award of 30% of the fund is reasonable, which is $5,400,000. A lodestar cross-check further supports the 30% award. Considering plaintiffs'

---

[15] Class counsel's work has been adequate in this case. However, the court notes that counsel twice failed to comply with the court's deadlines regarding class notice. (See Dkt. 265, Court's Order of September 3, 2021, at 1 n. 1); (Dkt. 271, Motion at 6) (stating that additional class notices were mailed on November 29, 2021 – which was after the court-ordered deadline of September 29, 2021).

lodestar of $2,988,680, (Dkt. 266, Fees Motion at 12), this amount would result in an approximate multiplier of 1.81.

B. Costs.

Class counsel seek $571,244.20 in costs. (See Dkt. 266, Fees Motion at 1, 18). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $571,244.20 in costs.

C. Class Representatives Service Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service awards at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 263, PAO at 14-15); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that the requested service awards were appropriate. (See Dkt. 263, PAO at 15); (Dkt. 259-2, Settlement Agreement at ¶ 77(b)). The court therefore concludes that the requested service payments are appropriate: $5,000 each for Verduzco and Villar, and $10,000 each for Negrete, Anderson, Avila, Maldonado, Villela, Perez, Njoroge, Patriz, Ibarra, Cruse, and Soto.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement **(Document No. 271)** is **granted** as set forth herein.

2. Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards **(Document No. 266)** is **granted** as set forth herein.

3. The court hereby **grants final approval** of the parties' Amended Stipulation of Class Action Settlement ("Settlement Agreement") (Document No. 259-2). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 8 of the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6. Plaintiffs Verduzco and Villar shall each be paid a service payment of $5,000.00, and plaintiffs Negrete, Anderson, Avila, Maldonado, Villela, Perez, Njoroge, Patriz, Ibarra, Cruse, and Soto shall each be paid a service payment of $10,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $5,400,000.00 in attorney's fees, and $571,244.20 in costs in accordance with the terms of the Settlement Agreement and this Order.

8. The Claims Administrator, Simpluris, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. The LWDA shall be paid $270,000.00 pursuant to the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

Dated this 7th day of February, 2022.

/s/<br>
Fernando M. Olguin<br>
United States District Judge